**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shirley Lorraine Foos, | No. CV-15-00154-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Plaintiff Shirley Lorraine Foos seeks review of the Social Security Administration Commissioner's decision denying her application for supplemental security income benefits under the Social Security Act. (Doc. 1; Doc. 14.) For the reasons below, the Court will affirm the Commissioner's decision.

**I.   Background**

On June 17, 2011, Plaintiff filed applications for disability insurance and supplemental security income benefits. (AR 187-91.)[1] Plaintiff alleged that she became unable to work on May 1, 2011. (AR 192-201.) Plaintiff's applications were initially denied on October 18, 2011, and denied upon reconsideration on April 24, 2012. (AR 100-03, 104-07, 113-15, 116-19.) In a decision dated June 7, 2013, the ALJ found that

---

[1] Citations to "AR" are to the administrative record.

Plaintiff was not entitled to disability insurance or supplemental social security benefits.[2] (AR 12-21.)   Plaintiff requested the Appeals Council review the decision, but by notice dated December 2, 2014, the Appeals Council declined to set aside the ALJ's decision. (AR 1-7.)

Having exhausted the administrative review process, on January 29, 2015, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g).  (Doc. 1.)  On June 8, 2015, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits, or, alternatively, seeking remand for a new hearing.  (Doc. 14.)  Plaintiff presented two issues in her Opening Brief: (1) "Whether the ALJ committed harmful legal error in granting little or no weight to the physical function assessments of Dr. [Keith] Shillito"; and (2) "Whether the ALJ provided clear and convincing reasons for discounting the credibility of [Plaintiff's] subjective complaints."  (Doc. 14 at 2.)  On July 8, 2015, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 18.)  Plaintiff did not submit a reply brief, and time to do so has expired. LRCiv 16.1(c).

**II.   Relevant Record Evidence**

    **a.  Summary of Relevant Medical Record Evidence**

        **i.   Treating Physician, Dr. Shillito**

Plaintiff sought treatment for migraines, fibromyalgia, arthritis, and actinic keratosis from Dr. Shillito. (AR 343.)  On April 15, 2010, Dr. Shillito performed blood tests that revealed a negative rheumatoid factor and negative ANA. (AR 408.)  Dr. Shillito then diagnosed Plaintiff with fibromyalgia and left knee pain and renewed her prescription for a narcotic pain reliever.  (*Id.*)  On July 27, 2010, because of Plaintiff's migraines, fibromyalgia, and actinic keratosis, Dr. Shillito placed Plaintiff on an eight-

---

[2] The ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia; migraine headaches; and actinic keratosis.  (AR 14.)  However, the ALJ found Plaintiff has a residual functional capacity to perform light work. (AR 15.)  The ALJ further found that Plaintiff was capable of performing past relevant work as a secretary and payroll clerk.  (AR 20.)

week trial of Savella and renewed her Imitrex and Topiramate.  (AR 403.)  On November 5, 2010, Plaintiff reported continued migraines and fibromyalgia, but that she was unable to handle the higher dosage of Topiramte.  (AR 396.)  Dr. Shillito discussed being "in full support" of her application for disability because they "have had difficulty controlling her migraines and pain."  (AR 397.)  Dr. Shillito prescribed Plaintiff monthly B-12 injections for fatigue and follow up treatments with Dr. Shillito every three months.  (AR 375, 397.)  In May 2011, Plaintiff traveled to Oregon for two weeks.  (AR 361.)  On April 5, 2011, Plaintiff reported to Dr. Shillito that she was able to walk her dog every day and to ride a bicycle.  (AR 389, 407.)  On May 24, 2011, Plaintiff reported improvement since quitting her job.  (AR 385.)

On December 13, 2011, Dr. Shillito completed a Multiple Impairment Questionnaire.  (AR 364-71.)  Dr. Shillito opined that in a regular eight-hour workday: (1) Plaintiff could sit for up to two hours a day; (2) she could stand and walk up to two hours a day; (3) she had the need to get up and move around every hour for 15 to 30 minutes; (4) she could lift and carry up to five pounds frequently and 10 pounds occasionally; and (5) "due to her migraines, fibromyalgia, and skin condition she would not be able [to] hold a competitive job without risking being let go."  (AR 366-70.)  In letters dated July 3, 2012 and April 26, 2013, Dr. Shillito affirmed the same diagnoses and functional limitations as set forth in his December 13, 2011 Questionnaire responses.  (AR 420, 532.)

On April 15, 2013, Plaintiff, on referral from Dr. Shillito, was seen by neurologist Joshua Tobin for an evaluation of her migraines.  (AR 507.)  Examination revealed 18 of 18 tender points to palpation.  (AR 508.)  Dr. Tobin found that factors contributing to Plaintiff's migraines were pain medication overuse and the uncontrollable nature of her fibromyalgia.  (AR 508-09.)

### ii. Examining Physician, Dr. Glenn Kunsman

On September 20, 2011, Plaintiff underwent examination and evaluation by agency physician, Dr. Kunsman.  (AR 338-42.)  Dr. Kunsman found numerous 5 to 10-

millimeter circular lesions, some with ulceration in various stages of healing; and radial and pedal pulse strength at 2 out of 4 bilaterally. (*Id.*) Dr. Kunsman endorsed the diagnoses of stable osteoarthritis of the hands, stable fibromyalgia with 18 tender points, an unspecified skin condition, and stable migraines. (AR 342.) However, Dr. Kunsman opined that none of the conditions has or will impose any limitations for 12 consecutive months. (*Id.*)

### iii. Non-Examining Physicians, Dr. Jean Goerss and Dr. Nadine Keer

On October 17, 2011, after conducting a review of the record, agency non-examining physician, Dr. Goerss, assessed Plaintiff's functional limitations. (AR 56-65, 66-75.) Dr. Goerss opined that each of Plaintiff's impairments are non-severe. (AR 71-73, 75.)

On April 20, 2012, Dr. Keer, an osteopathic doctor with the state agency, affirmed Dr. Goerss' conclusion that Plaintiff's conditions are non-severe. (AR 96.)

### b. Summary of Plaintiff's Hearing Testimony

On May 16, 2013, the ALJ held a hearing on Plaintiff's applications for benefits, during which Plaintiff testified regarding her symptoms and limitations. Plaintiff testified that previously she worked in payroll but she was currently not working and had stopped on May 30, 2011. (AR 27, 31.) The migraines caused her to quit because they "were getting so bad that [she] was missing so much work and in that position you cannot miss a lot of work." (AR 32.) Plaintiff testified that she was still experiencing the migraines at the time of the testimony and the migraines can be "very, very severe." (AR 34.) Plaintiff claimed that when the migraines occur, she throws up for the first three days, and they last five to seven days. (*Id.*) During this time, she cannot take care of herself and needs to go into a bedroom and laydown to get away from light and noise. (*Id.*) Plaintiff testified these migraines occur once to twice a month. (*Id.*) She has additional migraines that last approximately one to three days, occurring four times per month. (*Id.*) Plaintiff testified she takes injections of Imitrex for her migraine pain, which "do help" the pain. (AR 35.)

Plaintiff testified that she continues to suffer from fibromyalgia that causes deep muscle pain throughout her body, starts her migraines, and prevents her from sitting for more than 15 minutes or standing for more than five to 10 minutes. (AR 35-36.)

Plaintiff testified that she experiences arthritis in her left knee and has a torn meniscus, which is painful all the time. (*Id.* at 36.) She described activities that make the pain worse, such as walking, sitting, and standing. (*Id.*) She claimed she cannot walk further than from her front door to her car. (AR 37.) She asserted she lies down throughout the day because of pain, for approximately two hours. (*Id.*) She has arthritis in her hands, which are swollen and ache all the time. (*Id.*) The arthritis causes her to choose to pick up a half-a-gallon of milk instead of a full gallon, and she cannot lift anything greater than five pounds. (AR 38.)

Additionally, Plaintiff claimed she suffers from actinic keratosis, which causes open sores on her hands once per month. (*Id.*) She takes Aldara twice per month, which "helps a lot." (*Id.* at 38-39.)

She has two dogs, but her boyfriend takes care of them. She testified she "can't do household chores" and her boyfriend brings in a housekeeper because she is "unable to do it." (AR 40-41.) Plaintiff testified that she does not have difficulty when she drives locally and goes to the grocery store "[a]s long as [she's] not there for a long time," but anytime longer than 15 minutes "[her] body starts hurting" and she needs to sit down. (AR 41-42.)

Plaintiff testified that she has not tried "going off of [her] pain medicines," even though her neurologist has warned to "try" to reduce her pain medication. Plaintiff testified that she didn't agree with him. (*Id.* at 42-43.)

She testified that even without migraines, she does not "think [she] could work all day." (AR 46.) In the morning, she "hurt[s] the worst" and will therefore take her medicine. (AR 48.) Then, after she takes the pain medication, she will "get a cup of coffee, watch TV a little bit[,] . . . get on the computer[,] . . . [and] just hang out around the house." (*Id.*)

- 5 -

### III. Legal Standard

#### a. Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was

inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (where some reasons supporting an ALJ's credibility analysis are found invalid, the error is harmless if the remaining valid reasons provide substantial evidence to support the ALJ's credibility determination and "the error does not negate the validity of the ALJ's ultimate conclusion.").

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff has the residual functional capacity to perform light work and is not entitled to benefits. (AR 14-20.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (AR 14.) At step two, the ALJ found that Plaintiff has the following severe impairments: fibromyalgia; migraine headaches; and actinic keratosis. (*Id.*) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (AR 15.) At step four, the ALJ found that "[Plaintiff] has the residual functional capacity to perform light work." (*Id.*) The ALJ further found that "[Plaintiff] is capable of performing past relevant work as a secretary and payroll clerk" because "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (AR 20.) The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 1, 2011, through the date of this decision." (AR 21.)

**IV. Analysis**

Plaintiff argues that the ALJ's decision is defective for two reasons: (1) the ALJ committed harmful legal error in giving little weight to the physical function assessments of Dr. Shillito; and (2) the ALJ did not provide clear and convincing reasons supported by substantial evidence for discounting the credibility of Plaintiff's subjective complaints. (Doc. 14 at 2.) The Court addresses each argument below.

### a. Weighing of Medical Source Evidence

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinions of treating physician, Dr. Shillito. As detailed below, the Court disagrees.

### i. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinions of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original).

### ii. The ALJ did not err in rejecting the opinions of treating physician, Dr. Shillito.

Plaintiff's functional restrictions of fibromyalgia, migraines, and skin condition were assessed by four medical sources: treating physician, Dr. Shillito, examining physician, Dr. Kunsman, and non-examining physicians, Drs. Goerss and Keer. Dr. Shillito determined that Plaintiff's impairments precluded the activities attendant to full-time work. (AR 366-67, 370, 397.) Dr. Kunsman found that the impairments did not preclude the activities attendant to full-time work, while Drs. Goerss and Keer

determined that those impairments did not rise to the level of being severe at step two. (AR 71-73, 75, 96, 342.)  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan*, 528 F.3d at 1198).  Therefore, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Shillito's opinions.

The ALJ gave Dr. Shillito's opinion little weight because: (1) Dr. Shillito gave an "opinion on an issue reserved to the Commissioner"; (2) "[t]he course of treatment pursued by [Dr. Shillito] has not been consistent with what one would expect if the claimant were truly disabled, as the doctor reported"; and (3) Dr. Shillito's opinion "is not supported by the objective medical evidence and it is inconsistent with the record as a whole." (AR 19.)

The Court finds that the ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting Dr. Shillito's opinions.  First, the ALJ properly rejected Dr. Shillito's statement that Plaintiff is disabled.  In a letter dated July 3, 2012, Dr. Shillito indicated that Plaintiff would not be able to hold a competitive job.  (AR 420.) Dr. Shillito made the same comments in his December 13, 2011 Multiple Impairment Questionnaire, and his April 26, 2013 letter.  (AR 370, 532.)  "A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that we will determine that [the claimant is] disabled."  20 C.F.R. § 404.1527(d)(1).  This opinion is "reserved to the Commissioner because they are administrative findings that . . . would direct the determination or decision of disability."  (*Id.*)  Therefore, the ALJ properly rejected Dr. Shillito's conclusory statements that Plaintiff cannot hold a full-time, competitive job.  (AR 19.)

Second, the ALJ asserted that Dr. Shillito's recommended course of treatment was conservative and inconsistent with Dr. Shillito's opinions regarding Plaintiff's functional limitations.  (AR 17, 19.)  The ALJ cited to Dr. Shillito's medical examination assessments and the medication report showing a continued non-aggressive treatment of

- 10 -

narcotic pain medication, B12 injections, routine office visits, and chiropractic visits with no additional, more aggressive treatment recommendations. (AR 17, 345-60, 380-85, 423-25, 437-64, 468-69.) *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (incongruity between treating doctor's questionnaire responses and her medical records provided a specific and legitimate reason for rejecting the doctor's opinion of claimant's limitations); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the physician's] extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes.). Notably, Plaintiff receives follow-up appointments every three months to manage her pain through medication. (AR 358, 388-89.) Further, with regard to her skin condition, the ALJ cited to medical records that show Plaintiff only had liquid nitrogen treatments approximately every six months. (AR 18, 430, 432.)

Plaintiff cites to *De Herrera v. Astrue*, 372 Fed. Appx. 771, 776 (9th Cir. 2010) (unpublished), to argue that "the Ninth Circuit has expressly found that such treatment, consisting of 'powerful narcotics like Vicodin,' does not violate the 'conservative treatment rule.'" (Doc. 14 at 17.) However, Plaintiff quotes Judge Reinhardt's dissenting opinion. *De Herrera*, 372 Fed. Appx. at 776. In *De Herrara*, the Ninth Circuit affirmed the ALJ's decision, even though the plaintiff had been prescribed Vicodin. *Id*. at 774; *see also Morris v. Colvin*, No. 13–6236, 2014 WL 2547599, at *4 (C.D. Cal. June 3, 2014) (ALJ properly discounted credibility where treatment consisted of physical therapy, chiropractic treatment, and Vicodin).

Third, the ALJ found that Dr. Shillito's "opinion is not supported by any objective medical evidence in the record." (AR 19.) The ALJ cited other medical evidence in the record regarding Plaintiff's physical limitations that is inconsistent with Dr. Shillito's assessment of Plaintiff's limitations. (AR 19-20, 343-408.) *See also Batson v. Comm'r of the SSA*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings); *Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999).

Specifically, the ALJ noted that during the physical exam with Dr. Kunsman, Plaintiff "denied any significant impact on her activities of daily living, she indicated she is able to complete self-care activities, and she indicated she is able to ambulate without significant limitations throughout the day." (AR 18, 339-40.) Additionally, Dr. Kunsman observed that Plaintiff "is able to stand, walk to the examination table, get on to and sit on the examination table without assistance and without difficulty." Dr. Kunsman also found that the Plaintiff "was able to lift each foot off the ground and stand without assistance and demonstrated appropriate balance." (AR 340.) The ALJ also cited to treatment records from Dr. Shillito, in which Plaintiff's physical exam showed she was well appearing and in no distress, and when receiving her B12 shots, she reported no other problems. (AR 18, 387-89.) "[I]f evidence exists to support more than one rational interpretation, [the court] must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193.

Therefore, the Court finds the ALJ's treatment of Dr. Shillito's opinions is free of harmful legal error and is supported by substantial evidence.[3]

### b. Plaintiff's Symptom Testimony

Plaintiff alleges that the ALJ erred in his treatment of Plaintiff's testimony. (Doc. 14 at 14-17.) However, as detailed below, the Court finds the ALJ provided sufficient clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

### i. Legal Standard

In order to evaluate the credibility of the subjective testimony of a claimant the ALJ engages in a two-step analysis. *Garrison*, 759 F.3d at 1014-15 (citing *Lingenfelter*, 504 F.3d at 1035-36). "First, the ALJ must determine whether the claimant has presented

---

[3] The ALJ also found in his decision that "a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." (AR 19.) Although the Court does not find this reason, alone, is sufficient to reject Dr. Shillito's opinions, in light of the other specific and legitimate reasons supported by substantial evidence the ALJ provided and that are discussed above, the Court does not find that the ALJ erred in giving Dr. Shillito's opinions little weight.

- 12 -

objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The Plaintiff is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Instead, the Plaintiff must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160-61 ("requiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon."). "The ALJ may consider many factors in weighing a claimant's credibility, including '(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.'" *Tommasetti*, 533 F.3d at 1039 (citing *Smolen*, 80 F.3d at 1284); *Orn*, 495 F.3d at 637–39. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ may consider the objective medical evidence, the claimant's daily activities, location, duration, frequency, and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication taken, and treatments for relief of pain or other symptoms. *See* 20 C.F.R. § 404.1529(c);

*Bunnell*, 947 F.2d at 346.

At this second step, the ALJ may reject a claimant's testimony regarding the severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "'The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, because there was no affirmative finding of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff's subjective complaints were not wholly credible.

### ii. The ALJ did not err in discounting Plaintiff's testimony.

The ALJ discounted Plaintiff's testimony for the following reasons: (1) Plaintiff's daily activities "cannot be objectively verified" and "it is difficult to attribute [Plaintiff's] [alleged] degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons"; (2) "the record suggests [Plaintiff] was not completely forthcoming regarding her daily activities"; (3) "[Plaintiff] failed to follow treatment recommendations"; and (4) "[the] treatment has been essentially routine and/or conservative in nature." (AR 16-17.)

The Court finds that the ALJ provided clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. With regard to daily activities, while an ALJ may discredit a claimant's allegations if a claimant has "engaged in numerous daily activities involving skills that could be transferred to the workplace," *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005), "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597,

1  603 (9th Cir. 1989)) (finding "only a scintilla of evidence in the record to support the
2  ALJ's finding that [the claimant] lacked credibility about her pain" where the claimant
3  was able "to go grocery shopping with assistance, walk approximately an hour in the
4  malls, get together with her friends, play cards, swim, watch television, . . . read . . . . and
5  exercise at home.")

6  Here, the ALJ's finding that Plaintiff's limited daily activities could not be
7  objectively verified is not supported by substantial evidence. (AR 16.) The ALJ failed to
8  cite to any meaningful evidence regarding Plaintiff's specific daily activities in his
9  analysis.

10  Similarly, the ALJ found that it is difficult to attribute the "degree of limitation to
11  the claimant's medical condition, as opposed to other reasons." (AR 16.) However, the
12  ALJ failed to specify the "other reasons" that account for Plaintiff's degree of limitations.
13  "Attributing the degree of limitation … to 'other reasons,' when those 'other reasons' are
14  not specified, provides no support for the ALJ's adverse credibility finding." *McKim v.*
15  *Astrue*, No. 11cv5815–RBL–JRC, 2012 WL 5250096 *5 (W.D. Wash. Sept. 4, 2012).
16  The ALJ cannot rely on general findings, but must specifically identify what testimony is
17  credible and what evidence undermines the claimant's complaints. *Burrell v. Colvin,*
18  775 F.3d 1133, 1137 (9th Cir. 2014). The Court therefore finds these reasons are not
19  clear and convincing reasons supported by substantial evidence for discounting Plaintiff's
20  testimony.

21  However, the ALJ also set forth specific inconsistencies between Plaintiff's
22  testimony and her statements in the record regarding her daily activities. For example,
23  the ALJ noted that although Plaintiff testified she generally spends the day around the
24  house, in April 2011, she stated that she walks her dog every day. (AR 16, 389.)
25  Likewise, Plaintiff reported to Dr. Shillito that she was going to Oregon for two weeks.
26  (AR 16, 386.) Finally, the ALJ noted that during her exam with Dr. Kunsman, Plaintiff
27  denied significant impact on her daily activities and is able to ambulate "without
28  significant limitations throughout the day." (AR 18, 339.) The Court finds that the ALJ

properly discredited Plaintiff's testimony based on her inconsistent statements regarding her daily activities. *See Batson*, 359 F.3d at 1196 (ALJ properly discredited a claimant's allegations based on "contradictions in the claimant's own testimony about [her] activities of daily living").

The ALJ also discounted Plaintiff's testimony because she failed to follow treatment recommendations. (AR 18.) Specifically, Dr. Tobin found that the overuse of multiple pain medications was a contributing factor towards her headaches. (AR 508-09.) Likewise, Dr. Shillito advised Plaintiff should reduce her use of narcotic pain medication. (AR 535.) Plaintiff testified she believed the medication reduced her migraines, she didn't agree with the Doctor's recommendations to reduce her medication, and she has not gone off her pain medication. (AR 42-46.) The ALJ found that "[t]his demonstrates a possible unwillingness to do that which is necessary to improve her condition." (*Id.*) When a plaintiff fails "to seek treatment or follow a prescribed course of treatment" an ALJ may discredit the alleged symptoms. *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) (claimant's failure to assert an adequate reason for not complying with doctor's advice can cast doubt on the sincerity of pain testimony). Therefore, the Court finds that Plaintiff's failure to follow treatment recommendations is a clear and convincing reason supported by substantial evidence for discounting Plaintiff's testimony.

The ALJ also found that Plaintiff's treatment "has been essentially routine and/or conservative in nature." (AR 17.) *See Tommasetti*, 533 F.3d at 1039–40 (an ALJ may infer that pain is not disabling if a claimant seeks only minimal conservative treatment); *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999) (rejecting subjective pain complaints where [Plaintiff] "claim[ed] that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received"). As detailed above, Plaintiff's

course of treatment consisted of pain medication, B12 shots, physical therapy, and liquid nitrogen treatments. The Court finds this is a clear and convincing reason supported by substantial evidence for discrediting Plaintiff's testimony.

When an ALJ relies on multiple factors for discounting a claimant's credibility, the decision can be sustained even if some credibility factors are eliminated, as long as the credibility factors that remain are valid and based on substantial evidence. *Carmickle*, 533 F.3d at 1162-63, 1163 n.4. Here, although the Court finds that not all of reasons the ALJ provided are supported by substantial evidence, the ALJ provided several reasons that meet the standard. Therefore, the Court will affirm the ALJ's decision.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is affirmed.

**IT IS FURTHER ORDERED** that Clerk of the Court shall enter judgment accordingly and terminate this action.

Dated this 31st day of March, 2016.

Honorable John Z. Boyle
United States Magistrate Judge